1  Mark E. Brenner, Esq.
   California State Bar No. 106962
2  MARK E. BRENNER, A Professional Corporation
   7009 Owensmouth, Suite 102
3  Canoga Park, CA 91303

4  Telephone No. (818) 313-9966

5  Attorney for Debtors

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10  In re:                          Case No. 6:10-bk-10280-PC

11                                  NOTICE OF MOTION AND DEBTORS'
    Aaron NADEAU                    MOTION FOR A DETERMINATION OF
12  Wendy NADEAU                    VALUE OF THE DEBTOR'S REAL
                                    PROPERTY AND AN ORDER TO
13                                  AVOID THE LIEN OF CITIBANK, N.A.;
                      Debtors,      DECLARATIONs OF BRIAN BONHAM
14                                  AND AARON NADEAU IN SUPPORT
                                    THEREOF
15

16                                  Date: February 17, 2010

17                                  Time: 1:30 p.m.

18                                  CRTM: 304 3420 12TH St., Riverside CA
                                    92501
19
    TO THE HONORABLE PETER CAROLL, UNITED STATES BANKRUPTCY
20
    JUDGE, ROD DANIELSON, THE CHAPTER 13 TRUSTEE,CITIBANK, N.A., THE
21
    PURPORTED SECURED LENDER AND ALL OTHER PARTIES IN INTEREST:
22
          Please take notice that on the date and time in the indicated in the caption of this notice,
23
    the Debtors, AARON NADEAU AND WENDY NADEAU, through their attorney of record,
24
    Mark E. Brenner, will move this court, pursuant to 11 U.S.C. 506(a) and 1325(a)(5)(B) and *In re*
25
    *Lam (Lam v. Investors Thrift)*, 211 B.R. 36 (9th Cir. BAP 1997) for a determination of the value
26
    of the real property located at 35233 Velardo Dr., Yucaipa, California, (hereafter "Real
27
    Property") to be $155,000 based on an appraisal as of Brian Bonham, and stay post petition
28
    monthly payments to Gateway Equity Fund, LLC (the "Lender") by the Debtors, and treat its

---

                MOTION TO VALUE REAL PROPERTY AND STRIP LIEN        Page 1

1   second priority lien in the amount of approximately $142.998.00, as wholly unsecured for the

2   purposes of plan confirmation.

3       The motion is made in conjunction with the Debtor's *Chapter 13 Plan*. The basis for the

4   motion is that the claim of the Lender, a second trust deed on the debtor's residence, is entirely

5   unsecured due to the fact that the senior lien, in favor of Ditech Funding exceeds the fair market

6   value of the subject property, and therefore not entitled to treatment under the Debtor's proposed

7   Chapter 13 plan as a secured creditor for the full amount of its purported claim.

8       This motion is made on the further grounds set forth in the attached Memorandum of

9   Points and Authorities and the Declarations of the Debtor, Aaron Nadeau, and Brian Bonham in

10  support thereof, and on such further grounds as may be presented in oral arguments before this

11  Court or upon reply to any Opposition filed in response to this Motion and any facts of which the

12  Court may take judicial notice.

13      PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rule 9013-1(f)

14  requires a written response to be filed and served at least 14 days before the hearing. Said

15  opposition shall be supported by competent and admissible evidence and shall consist of either:

16  (i) a brief, but complete written statement of all the reasons in opposition thereto or in support or

17  joinder thereof and answering memorandum of points and authorities, declarations and copies of

18  all photographs and documentary evidence on which the responding party intends to relay; or (ii)

19  a written statement that the motion will not be opposed. Failure to so respond to the motion may

20  be deemed as consent to the granting of the relief requested herein. Any response or opposition

21  to the motion must be filed with the court and served on the Debtors counsel at the address noted

22  in the upper left hand corner of the first page of this notice and at least 14 days prior to the

23  scheduled hearing date on the motion (not excluding Saturdays, Sundays, and legal holidays).

24  Dated: January 12, 2010                          Respectfully submitted,

25

26                                                  _____

27                                                  Mark E. Brenner, Attorney for Debtors

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

On October 20, 2003 the Debtors purchased the residence located at 35233 Velardo Dr., Yucaipa, California ("Residence"). Since the time of purchasing the property, the Debtors have resided in the Residence with their two children. The Residence is encumbered by a first trust deed in favor of Ditech Mortgage, which, as of the date of filing, has an outstanding balance of no less than $167,095. See Debtor's Amended Schedule A and attached to this motion as **Exhibit 1**.[1] The property is further encumbered by a second deed of trust in favor of Citibank N.A. in the amount of $147,823.37. See Debtor's Amended Schedule F attached hereto as **Exhibit 3**.

On December 29, 2009 the Residence was appraised by a certified real estate appraiser, Brian Bonham, as having a current, fair market value of $155,000. A copy of Mr. Bonham's report is attached hereto as **Exhibit 4**. According to the testimony of Mr. Bonham, the value of the property has not increased since the date of the appraisal.

## II.

## SUMMARY OF EQUITY

| | |
|---|---|
| Appraised Value | $155,000.00 |
| Claim of First Trust Deed Holder (Ditech) | $168,088.00 |
| Equity after Subtracting Ditech's lien | ($13,088.00) |
| Second Trust Deed Holder percent Unsecured | 100.00% |

///

///

///

[1] Debtors' original schedules were prepared prior to the receipt of the appraisal report by Brian Bonham.

III.

ARGUMENT

A.

THE REAL PROPERTY MUST BE VALUED FOR THE PURPOSES OF PLAN

CONFIRMATION.

Section 1322(b)(2) of the *United States Bankruptcy Code* states in part that:

> "The plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

In *In re Plouffe*, 157 B.R. 198, (Bankr. D. Conn. 1993), the court stated that the plain language of 11 U.S.C. § 1322(b)(2) provides that anti-modification protection is only available to holders of *secured* claims and held that for a creditor to claim the protection against modification of its lien, it must qualify as a holder of a secured claim as determined by Section 506(a).

Section 506(a) provides in pertinent part:

> "An allowed claim of a creditor secured by a lien on property in which the estate has an interest. . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. . . and is an unsecured claim to the extent that the value of such creditor's interest. . .is less than the amount of such allowed claim."

The United States Supreme Court in *Nobelman v. American Savings Bank*, 508 U.S.324 (1993) held that section 1322(b)(2) does not apply to holders of *totally* unsecured claims. Similarly, in *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36 (9th Cir. BAP, 1997) the court relied on the *Nobelman* decision and held that Section 1322(b)(2), the prohibition against a chapter 13 plan modifying the rights of holders of claims secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims. The extension of the protection of 1322(b) to wholly unsecured lien holders is contrary to the provisions of the bankruptcy code allowing the dischargebility of unsecured claims.

In *Zimmer  v. PSB Lending*, 313 F.3d 1220 (9th Cir. 2002), the Ninth Circuit took up the *Lam* issue and held ". . .more simply, a claim of such as a mortgage is not a 'secured claim' to the extent that it exceeds the value of the property that secures it.  Under

the Bankruptcy Code, 'secured claim' is thus a term of art; not every claim that is secured

by a lien on property will be considered a 'secured claim.'" *Id.*, at 1223.

Thus, it would appear from the above quoted language that the value of a lien

creditor's interest in collateral that is property of a bankruptcy estate must be determined

after considering two factors: (1) the purpose of the valuation and (2) the proposed

disposition or use of the property.

In this matter the property has a fair market value as appraised of $155,000.00. The

outstanding balance of the first trust deed holder, Ditech Funding, is no less than

$1167,095, as evidenced by **Exhibits 1 and 2** and the declaration of the Debtor, Aaron

Nadeau. This evidence leads to the conclusion that the claim of the junior lienor, Citibank

is totally unsecured.

Therefore, under section 506(a), Citibank N.A. is the holder of a completely

unsecured claim, and any assertions made by referring to its security documents are illusory

and are not based on current law.

B.

VALUATION OF THE PROPERTY IS NECESSARY FOR AN EFFECTIVE

REORGANIZATION AND DEBTORS SHOULD NOT BE REQUIRED TO MAKE

POST PETITION PAYMENTS

As provided in Section 506(a), valuation fo the secured interest should take place

". . .in conjunction with any hearing. . .on a plan affective such creditor's interest." This

Motion is made in conjunction with the Debtors' Chapter 13 Plan. The Debtor has

demonstrated under Section 506(a) that the real property is worth less than the security

interest of the first trust deed and that reorganization is in prospect. Accordingly, the

second lienholder, Citibank, N.A. is not entitled to post petition payments on its second

priority loan. See *United Savings Association of Texas v. Timbers of Inwood Forest

Association, Ltd.*, 484 U.S. 365, 108 S.Ct.626, 98 L.Ed.2d 740 (1998).

/ / /

/ / /

IV.

CONCLUSION

Based upon the foregoing,  the interest of the junior lienor, Citibank, N.A., appears to be completely unsecured and the Debtor respectfully request that this court enter an order holding the second trust deed lien of Citibank, N.A. to be an unsecured lien and therefore to be treated as an unsecured claim in Class 5 of the debtor's Chapter 13 plan and that the debtor be relieved of making any post petition payment to Citibank, N.A. for the second priority loan and a finding that no funds be advanced to Citibank, N.A. on account of any plan, or payment for curing any amount in default or in arrears.  The debtor also respectfully requests that the court hold that the lien by Citibank, N.A. have no further force and effect as a secured lien against the debtor's residential property for the pendency of this Chapter 13 bankruptcy proceeding, and following the discharge hereof, and for such other and further relief as the court may deem just and proper.

Dated: January 12, 2010                          Respectfully submitted,

                                                 Mark E. Brenner, Attorney for Debtors

## DECLARATION OF BRIAN BONHAM IN SUPPORT OF
## DEBTOR'S MOTION TO AVOID LIEN OF CITIBANK, N.A.

BRIAN BONHAM, declares:

1.   I am a residential real estate appraiser in the State of California hold license number AL038151.  A true and correct copy of my resume of qualifications is attached to my appraisal report and made a part thereof.

2.   The following facts and opinions are within my personal knowledge and if called as a witness I could and would competently testify hereto.

3.   On or about December 29, 2009 I finalized the Uniform Residential Appraisal Report ("report") on the property of Aaron Nadeau and Wendy Nadeau located at 35233 Velardo, Yukaipa, California ("the Property").  I personally visited the property and personally performed all the tasks necessary to finalize said report.  A true and correct copy of report number 31130ALTA, on which my signature appears is attached to this motion as **Exhibit 4.**

4.   Based upon my education, training and experience, my opinion is that the Property has a present fair market value of, and is worth $155,000.

5.   Also, in my opinion the property has not increased in value since the date of the report.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on  January 4, 2010 at Cherry Valley, California.

Brian Bonham

1

## DECLARATION OF AARON NADEAU

2

### IN SUPPORT OF MOTION TO AVOID LIEN OF CITIBANK, N.A.

3

AARON NADEAU declares:

4

1.  I am the debtor in the present bankruptcy proceeding and own an interest in the real

5

property located at 35233 Velardo Dr., Yukaipa, California ("the property"). I have

6

personal knowledge of the facts stated in this declaration and if called as a witness, I

7

could and would competently testify hereto.

8

2.  On or about October 20, 2003, my wife and I purchased the property, where we

9

have lived continually ever since.  The property is encumbered by a first trust deed

10

in the name of Ditech Funding.  Prior to the filing of this motion I reviewed all the

11

statements and demands for payment from Ditech, as well as the notice of trustee's

12

sale, which is attached to this declaration.  Two old statements are attached to this

13

declaration and incorporated herein by reference.  Based on the information from

14

the lender, and based on my knowledge of this lender's affairs, the present

15

outstanding balance owed to the first trust deed holder is $168,088.

16

3.  The property is further encumbered by a second deed of trust in favor of Citibank N.

17

A. in the amount of $147,823.08.

18

4.  As the owner of the property, I am aware of the recent sales of similar properties in

19

and near the neighborhood where I live.  It is also my opinion that the present fair

20

market value of the property is that set forth in the declaration of Brian Bonham and

21

his report.

22

5.      I declare under penalty of perjury that the foregoing is true and correct.

23

Executed on January 11, 2010 at Yukaipa, California.

24

25

_____

26

Aaron Nadeau

27

28

## CUSTOMER INFORMATION

**ditech**
Home Financing by GMAC

| | | |
|---|---|---|
| Name: | Aaron Nadeau<br>Wendy Nadeau | **PROPERTY ADDRESS**<br>35233 VELLARDO DRIVE<br>YUCAIPA    CA 92399 |
| Account Number: | 0654751711 | |
| Home Phone #: | (909)797-8481 | |

CS07 02:29    0007215 20090919 8194102 D8KA   1 OZ DOM 819410000* 146316   DT
#BWNHJPY
#KW07771E50324#

||||||||||||||||||||||||||||||||||||||||||||||

AARON NADEAU
WENDY NADEAU
35233 VELARDO DRIVE
YUCAIPA CA 92399-4730

**Customer Care Inquiries: 1-866-711-4091**
**Home Financing Needs : 1-877-433-4933**

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.
If you do not want ditech to send you mortgage account statements in the future, please contact us at 866-711-4091.

### Account Information

| | |
|---|---|
| Account Number | 0654751711 |
| Current Statement Date | September 18, 2009 |
| Maturity Date | November 01, 2033 |
| Interest Rate | 5.87500 |
| Current Principal Balance* | $155,307.45 |
| Current Escrow Balance | $582.16- |
| Interest Paid Year-to-Date | $1,524.13 |
| Taxes Paid Year-to-Date | $926.25 |

### Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $993.79 |
| Subsidy/Buydown | $0.00 |
| Escrow | $273.63 |
| Unpaid Amount | $8,650.20 |
| Late Charges | $0.00 |
| Other | $988.45 |
| Total Unpaid Amount | $10,906.07 |
| Payment Date | March 01, 2009 |

**Please call 1-866-711-4091 for any questions
relating specifically to your bankruptcy.**

### Account Activity Since Last Statement

| Description | Due Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week). See back for automatic payment sign-up information and other payment options.

### Important News



Our records indicate a Bankruptcy has been filed in connection with this account.  This statement is being furnished for informational purposes only and is not an attempt to collect a debt.  Please disregard the payment information below to the extent it conflicts with any Order or requirement of the Court.  Please call the number listed above for questions relating specifically to your bankruptcy.

See Reverse Side For Important Information

## Mail This Portion With Your Payment
### Mortgage Payment Coupon

| ACCOUNT NUMBER | STATEMENT/CLOSING DATE | PAYMENT DUE DATE | YOUR TOTAL BALANCE | SCHEDULED PAYMENT |
|---|---|---|---|---|
| 9222645567 | 09/09/09 | 10/09/09 | $146,187.01 | $409.8 |

**HOME EQUITY LINE OF CREDIT**

☐ CHECK HERE FOR ADDRESS/PHONE CHANGE AND NOTE ON BACK

PAST DUE AMOUNT
$2,657.6

ENTER AMOUNT OF PAYMENT ENCLOSED

TOTAL CHARGES
$121.5

MINIMUM PAYMENT DUE
$3,188.9

FROM:   CITIBANK, N.A.
        PO BOX 790110 MS 504A
        SAINT LOUIS, MO 63179-0110

MAKE CHECK PAYABLE TO:

AARON A NADEAU
35233 VELARDO DR
YOCAIPA          CA 92399

CITIBANK, N.A.
P.O. BOX 688923
DES MOINES IA  50368-8923

2013 000000092226455567 9999999 0318896 110094         63

---

DETACH THE ABOVE AND MAIL WITH YOUR PAYMENT          PAGE  1 OF  1

**HOME EQUITY LINE OF CREDIT**

FOR BILLING INQUIRIES WRITE TO THIS ADDRESS:
CALLING WILL NOT PRESERVE YOUR RIGHTS.
CITIBANK
PO BOX 769004
SAN ANTONIO, TX 78245-9004

| ACCOUNT NUMBER | STATEMENT/ CLOSING DATE | CREDIT LINE | AVAILABLE CREDIT | TOTAL BALANCE |
|---|---|---|---|---|
| 9222645567 | 09/09/09 | $143,000.00 | .$.00 | $146,187.01 |

| EFF. DATE | ACTIVITY SINCE LAST STATEMENT | AMOUNT |
|---|---|---|
| 09/09/09 | PERIODIC FINANCE CHARGE  - INTEREST | $409.89 |

**IMPORTANT MESSAGES FROM CITIBANK**

FOR HELP WITH QUESTIONS ON YOUR ACCOUNT CALL CUSTOMER SERVICE AT:
1-800-685-0935

FINANCIAL ASSOCIATES ARE AVAILABLE MONDAY THROUGH FRIDAY
7:30 AM TO 10:00 PM CST

TDD - TEXT TELEPHONE 1-800-945-0258
(FOR SPEECH AND HEARING IMPAIRED CUSTOMERS ONLY)

---

**VARIABLE RATE BALANCE ACCOUNT SUMMARY**

| | PREVIOUS BALANCE | (+)ADVANCES & CHARGES | (-)PAYMENTS | (-)CREDIT ADJUSTMENTS | (+)DEBIT ADJUSTMENTS | (+)CREDIT PROTECTION | (+)FINANCE CHARGE | (=)NEW BALANCE |
|---|---|---|---|---|---|---|---|---|
| PRINCIPAL PORTION | $142,998.05 | $.00 | $.00 | $.00 | $.00 | $.00 | $409.89 | $142,998.( |
| TOTAL | $145,777.12 | $.00 | $.00 | $.00 | $.00 | $.00 | $409.89 | $146,187.( |

| VARIABLE RATE BALANCE AMOUNT DUE | | RATE SUMMARY | RATE PERIOD | CORRESPONDING ANNUAL PERCENTAGE RATE | NUMBER OF DAYS RATE APPLIED | DAILY PERIODIC RATE | AVERAGE DAILY BALANCE | Periodic FINANCE CHARGE | ANNUAL PERCENTAGE RATE: |
|---|---|---|---|---|---|---|---|---|---|
| PAYMENT DUE DATE | 10/09/09 | NUMBER OF DAYS THIS BILLING PERIOD | 08/09-09/08 | 3.375% | 31 | .0092465% | $142,998.05 | $409.89 | 3.375% |
| SCHEDULED PAYMENT | $409.89 | | | | | | | | |
| PAST DUE AMOUNT | $2,657.68 | 31 | | | | | | | |
| TOTAL CHARGES | $121.39 | | | | | | | | |
| MINIMUM PAYMENT DUE | $3,188.96 | | | | | | | | |

SEND PAYMENT TO:  CITIBANK, N.A. P.O. BOX 688925 DES MOINES IA  50368-8923
SEE REVERSE SIDE FOR IMPORTANT INFORMATION ABOUT YOUR ACCOUNT

citibank®

EXHIBIT 1

B6A (Official Form 6A) (12/07)

In re   Aaron Nadeau,                                         Case No. ____6:10-bk-10280____
        Wendy Shalom Nadeau
                                         Debtors

# SCHEDULE A - REAL PROPERTY - AMENDED

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a
cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for
the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W,"
"J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under
"Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and
Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity
claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or
if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 35233 Velardo Drive, Yucaipa, CA 92399-4730 | Fee simple | J | 155,000.00 | 167,095.00 |
| 1290 Bombay Court, Lake Havasu, AZ 86404 (Debtors intend to surrender this property) | Community Property Interest | W | 188,000.00 | 259,016.00 |

|  |  |  |
|---|---|---|
| Sub-Total > | 343,000.00 | (Total of this page) |
| Total > | 343,000.00 |  |

__0__  continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                  Best Case Bankruptcy

EXHIBIT 2

B6D (Official Form 6D) (12/07)

In re    Aaron Nadeau,                                      Case No. ____6:10-bk-10280____
         Wendy Shalom Nadeau
                                                                  Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS - AMENDED

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxx3013 | | | 02/05 First Mortgage | | | | | |
| Countrywide PO Box 10219 Van Nuys, CA 91410 | | | 1290 Bombay Court, Lake Havasu, AZ 86404 (Debtors intend to surrender this property) (Debtors intend to surrender this property) | | | | | |
| | | | Value $         188,000.00 | | | | 259,016.00 | 71,016.00 |
| Account No. xxxxxx1711 | | | 10/03 | | | | | |
| Ditech P.O. Box 780 Waterloo, IA 50704 | | | First Mortgage  35233 Velardo Drive, Yucaipa, CA  92399-4730 | | | | | |
| | | | Value $         155,000.00 | | | | 167,095.00 | 12,095.00 |
| Account No. xxxxxxxxxxxx5943 | | | Opened  1/01/08  Last Active 2/07/09 | | | | | |
| Gemb/ktm Retail Financ Po Box 6153 Rapid City, SD 57709 | | | Motorcycle | | | | | |
| | | | Value $         10,000.00 | | | | 9,069.00 | 0.00 |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |

<table>
<tr><td>0 continuation sheets attached</td><td>Subtotal<br>(Total of this page)</td><td>435,180.00</td><td>83,111.00</td></tr>
<tr><td></td><td>Total<br>(Report on Summary of Schedules)</td><td>435,180.00</td><td>83,111.00</td></tr>
</table>

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

EXHIBIT 3

B6F (Official Form 6F) (12/07)

In re    Aaron Nadeau,                                    Case No. _____6:10-bk-10280_____
         Wendy Shalom Nadeau

_____
                    Debtors

# AMENDED
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No. xxxxxx5567<br><br>Citi Bank<br>P.O. Box 790110 MS   504A<br>Saint Louis, MO 63179-0110 | | – | | 04/07<br>35233 Velardo Drive, Yucaipa, CA 92399-4730 (subject to motion to strip lien) | | | | 147,823.37 |
| Account No. xxxxxxx095-6<br><br>Citi Mortgage<br>P.O. box 6006<br>The Lakes, NV 88901 | | – | | 08/07<br>1290 Bombay Court, Lake Havasu, AZ  Unsecured foreclosed out second trust deed. | | | | 50,000.00 |
| Account No.<br><br>GE Money Bank<br>PO Box 960061<br>Orlando, FL 32896 | | C | | 2008 KTM 530 EXCR-Motorcycle Debtors intend to surrender this property | | | | 5,000.00 |
| Account No.<br><br>GMAC<br>PO Box 4622<br>Waterloo, IA 50704 | | C | | 2008 Cadillac Escalade | | | | 73,000.00 |

___1___    continuation sheets attached

Subtotal
(Total of this page)            275,823.37

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    S/N:33001-100105    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re   Aaron Nadeau,                                                    Case No. _____6:10-bk-10280_____
        Wendy Shalom Nadeau

_____
                    Debtors
                  **AMENDED**
# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. --xx317-1<br><br>SallieMae Servicing<br>P.O. Box 9500<br>Wilkes Barre, PA 18773-9500 | | C | 8/11/09<br>Student Loan | | | | 27,624.35 |
| Account No. | | | | | | | |
| Account No. | | | | | | | |
| Account No. | | | | | | | |
| Account No. | | | | | | | |

| | | |
|---|---|---|
| Sheet no. _1_ of _1_ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims | Subtotal<br>(Total of this page) | 27,624.35 |
| | Total<br>(Report on Summary of Schedules) | 303,447.72 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

EXHIBIT 4

**Bonham Appraisal Service**

File No. YUCP650A4MB9D11

## APPRAISAL OF



SFR

## LOCATED AT:

35233 Velardo Drive
Yucaipa, CA 92399

## FOR:

Nadeau
35233 Velardo Drive
Yucaipa, CA 92399

## BORROWER:

Nadeau

## AS OF:

December 29, 2009

## BY:

Brian Bonham

**Bonham Appraisal Service**

File No. YUCP650A4MB9D11

December 30, 2009

Nadeau
35233 Velardo Drive
Yucaipa, CA 92399

File Number:  YUCP650A4MB9D11

Greetings

In accordance with your request, I have appraised the real property at:

35233 Velardo Drive
Yucaipa, CA  92399

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved. The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of   December 29, 2009                    is:

$155,000
One Hundred Fifty-Five Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

Thank you for your business, Sincerely,

Brian Bonham

9510 Byham Lane, Cherry Valley, 92223;  (909)838-1636;  FAX (951)922-6967

## Uniform Residential Appraisal Report

File No. YUCP650A4MB9D11

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address 35233 Velardo Drive | City Yucaipa | State CA | Zip Code 92399 |
| Borrower Nadeau | Owner of Public Record Nadeau | | County San Bernardino |

Legal Description TR NO 4541 MT VIEW HGTS LOT 54

| | | | |
|---|---|---|---|
| Assessor's Parcel # 0319-302-03-0-000 | Tax Year 08-09 | | R.E. Taxes $ 1,873.00 |
| Neighborhood Name N/A | Map Reference 650A4 | | Census Tract 87.08 |
| Occupant [X] Owner [ ] Tenant [ ] Vacant | Special Assessments $ N/A | [ ] PUD | HOA $ N/A [ ] per year [ ] per month |
| Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) | | | |
| Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Market Value | | | |
| Lender/Client Nadeau | Address 35233 Velardo Drive, Yucaipa, CA 92399 | | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). NDC Data, MLS, First American Title Company, CMDC

| | | |
|---|---|---|
| I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. N/A | | |
| Contract Price $ N/A | Date of Contract N/A | Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s) |

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid. $ N/A    N/A - Market value

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | Property Values [ ] Increasing [X] Stable [ ] Declining | PRICE  AGE | One-Unit 75 % |
| Built-Up [ ] Over 75% [X] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | $(000) (yrs) | 2-4 Unit % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 70 Low New | Multi-Family % |
| Neighborhood Boundaries Yucaipa Blvd. to the North, 5th Street to the West, Fremont Street to the | | 320 High 90 | Commercial % |
| East, and Countyline Road to the South. | | 150 Pred. 40 | Other VAC 25 % |

Neighborhood Description  Subject is located in a neighborhood of average quality SFRS built out on a scatter lot basis. All facilities are available in the local area. Area shows a typical level of maintenance. Access to freeway and commutes are within expected Southern California distances.

Market Conditions (including support for the above conclusions)  The subject is located in an active market area with both conventional and government financing available at reasonable rates. Marketing times are typical 3-6 months if the property is priced and marketed reasonably. See addendum for additional comments.

| | | | |
|---|---|---|---|
| Dimensions 72.52X117.99X71.52X104.62 | Area 8016 Sq.Ft. +/- | Shape Irregular / See Plat | View Average Residential |
| Specific Zoning Classification R-S | Zoning Description Residential SFR | | |
| Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) | | | |

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley None | | |

| | | | |
|---|---|---|---|
| FEMA Special Flood Hazard Area [ ] Yes [X] No | FEMA Flood Zone X | FEMA Map # 0607398745F | FEMA Map Date 08/28/2008 |

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe  No apparent easements, encroachments or other adverse conditions are noted. Note preliminary title report has been reviewed.

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION materials/condition | INTERIOR materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [ ] Crawl Space | Foundation Walls Concrete | Floors Crpt/Tile/Wd A |
| # of Stories One | [ ] Full Basement [ ] Partial Basement | Exterior Walls Stucco | Walls Drywall A |
| Type [X] Det. [ ] Att. [ ] S-Det/End Unit | Basement Area N/A sq.ft. | Roof Surface Comp Shingle | Trim/Finish Wood/Painted A |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish N/A % | Gutters & Downspouts N/A | Bath Floor Tile A |
| Design (Style) Contemporary | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type Aluminum DP | Bath Wainscot Tile A |
| Year Built 1955 | Evidence of [ ] Infestation | Storm Sash/Insulated N/A | Car Storage None |
| Effective Age (Yrs) 25 | [ ] Dampness [ ] Settlement | Screens Yes | [X] Driveway # of Cars 4 |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities | WoodStove(s) # | Driveway Surface Concrete |
| [ ] Drop Stair [ ] Stairs | [ ] Other Fuel Gas | [X] Fireplace(s) # 1 [X] Fence Block | [X] Garage # of Cars 2 |
| [ ] Floor [ ] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck Conc [ ] Porch | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [X] Pool In ground [ ] Other | [ ] Att. [X] Det. [ ] Built-in |

| | | | | | |
|---|---|---|---|---|---|
| Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [ ] Microwave [ ] Washer/Dryer | | | | Other (describe) | |

Finished area above grade contains:  7 Rooms  4 Bedrooms  2 Bath(s)  1,545 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). Concrete porch, fireplace, detached 2 car garage, in ground pool, fenced.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.)  The subject is in average condition and there is no physical or economic obsolescence noted. Functional obsolescence noted for pool since pools do not recapture their cost.

Effective age is less than actual age due to newer flooring throughout, newer dual pane windows, and newer interior paint.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe.

Summary Appraisal

## Uniform Residential Appraisal Report

File No. YUCP650A4MB9D11

There are  10  comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 104,500  to $ 220,000
There are  46  comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 700,000  to $ 247,000

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 35233 Velardo Drive | 34947 Avenue C | | 13001 Orchid Street | | 34836 Acacia Avenue | |
| | Yucaipa | Yucaipa | | Yucaipa | | Yucaipa | |
| Proximity to Subject | | 3/4 mile North West | | 1/4 mile South | | 1 mile North | |
| Sale Price | $ N/A | | $ 162,000 | | $ 141,000 | | $ 155,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 93.97 sq. ft. | | $ 86.77 sq. ft. | | $ 126.63 sq. ft. | |
| Data Source(s) | Inspection | MLS, NDC Data | | MLS, NDC Data | | MLS, NDC Data | |
| Verification Source(s) | NDC Data | Doc# 436992 | | Doc# 418095 | | Doc# 534797 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | FHA / REO | | Conv / REO | | FHA / REO | |
| Concessions | | DOM - 159 | | DOM - 75 | | DOM - 14 | |
| Date of Sale/Time | N/A | 10-05-09 | | 09-24-09 | | 12-01-09 | |
| Location | Average | Average | | Average | | Similar | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 8016 SF | 7500 SF | | 8960 SF | | 8320 SF | |
| View | Avg. residential | Ave. Residential | | Ave. Residential | | Ave. Residential | |
| Design (Style) | Contemporary | Contemporary | | Contemporary | | Contemporary | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 51 | 71 | | 50 | | 54 | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total 7 Bdrms 4 Baths 2 | Total 6 Bdrms 3 Baths 2 | | Total 5 Bdrms 3 Baths 2 | | Total 4 Bdrms 2 Baths 1.5 | 1,500 |
| Room Count | | | | | | | |
| Gross Living Area | 30    1,545 sq. ft. | 1,724 sq. ft. | -5,500 | 1,625 sq. ft. | | 1,224 sq. ft. | 9,500 |
| Basement & Finished | N/A | N/A | | N/A | | N/A | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FWA C/Air | FWA C/Air | | FWA C/Air | | FWA C/Air | |
| Energy Efficient Items | None noted | None noted | | None noted | | None noted | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 2 Car Garage | |
| Porch/Patio/Deck | Concrete patio | Concrete patio | | Concrete patio | | Concrete patio | |
| | Pool | none | 5,000 | none | 5,000 | none | 5,000 |
| Net Adjustment (Total) | | [ ] + [X] - $ | 500 | [X] + [ ] - $ | 5,000 | [X] + [ ] - $ | 16,000 |
| Adjusted Sale Price | | Net Adj -0.3% | | Net Adj 3.5% | | Net Adj 10.3% | |
| of Comparables | | Gross Adj 6.5% % $ | 161,500 | Gross Adj 3.5% % $ | 146,000 | Gross Adj 10.3% % $ | 171,000 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  NDC Data, First American Title, IMRMLS
My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  NDC Data, First American Title, IMRMLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No transfers in the last 36 months | No transfers in the last 12 months | 05-2009 | 08-2009 |
| Price of Prior Sale/Transfer | | | 123750 | 240088 |
| Data Source(s) | Public Records | Public Records | Public Records | Public Records |
| Effective Date of Data Source(s) | 12-30-2009 | 12-30-2009 | 12-30-2009 | 12-30-2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales  Subject property is appraised "AS-IS". Per NDC Data subject last transferred 09-14-2000.

Please note the above statement covers the previous 36 month sales history.

Summary of Sales Comparison Approach.  All three comparables are located within the same market area as the subject and would be considered competitive alternatives by a prospective buyer. See attached addendum for additional comments on adjustments for the market reaction of differences of property characteristics.

Indicated Value by Sales Comparison Approach $  155,000

Indicated Value by: Sales Comparison Approach $ 155,000    Cost Approach (if developed) $ 182,400    Income Approach (if developed) $
Sales comparison has the most impact on the final value conclusion since it most closely represents the market forces active in determining the value. This report has digital electronic signature that meets ASB #8; Requires and eight digit password and is only used by this appraiser.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  See Attached Addendum

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 155,000 as of  December 29, 2009 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                      Produced using ACI software, 800.234.8727 www.aciweb.com                      Fannie Mae Form 1004 March 2005
                                                        Page 2 of 5                                                          1004_05 052008

## Uniform Residential Appraisal Report

File No. YUCP650A4MB9D11

**SALES COMPARISON COMMENTS:**

The sales are fee simple and representative of the cash equivalent price of the property at the time of sale. The comparable sales have a date of sale within the past 6 months from the date of value for the subject. These comparable sales are considered to be subject to the same market conditions as those currently in existence, therefore no adjustment for market conditions is warranted.

Adjustments are based on paired sales analysis, where appropriate, along with conversations with local Realtors, historical data and the Appraiser's knowledge of the market. The market driven adjustments found in the data for this report are listed below:

The Subject property is a 3 bedroom, 2 bath single family residence which displays average condition. The subject features average quality flooring throughout, fireplace in the living room, in ground pool, and a 2 car garage.

Comparable adjustments:
Bathroom count @ $1500 per half bathroom
Adjustments for living area equate to $35/SF which is representative of this market area.

Adjustments for differences in property characteristics such as the number of bathrooms and pool reflect the value recognized in the market. These amenities have a direct impact on marketability and adjustments are based on market reaction. No apparent market reaction to the number of bedrooms after adjustments for overall living area.

Adjustments for site size, are based on overall size and utility. The site size of the comparable sales vary in overall size however, the site utility of the comparable sales are similar to the subject.

**ADDITIONAL COMMENTS**

---

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   The land-to-value ratios is typical for the area. Site value was developed from current comparable market sales using the abstraction method.

**COST APPROACH**

ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW

| | | |
|---|---|---|
| OPINION OF SITE VALUE................................= $ | | 16,000 |
| Dwelling  1,545 Sq. Ft. @ $  106.54 ........= $ | | 164,604 |
| Sq. Ft. @ $ ...........= $ | | |
| Covered in base | | |
| Garage/Carport 450  Sq. Ft. @ $  28.13 ........= $ | | 12,659 |
| Total Estimate of Cost-New .....................= $ | | 177,263 |
| Less  70  Physical  Functional  External | | |
| Depreciation $29,840  $7,500  = $( | | 37,340) |
| Depreciated Cost of Improvements .....................= $ | | 139,923 |
| "As-is" Value of Site Improvements .....................= $ | | 26,500 |
| INDICATED VALUE BY COST APPROACH .....................= $ | | 182,400 |

Source of cost data Marshall & Swift
Quality rating from cost service Average   Effective date of cost data Quarterly
Comments on Cost Approach (gross living area calculations, depreciation, etc.) See sketch. The subject is considered to be of average quality according to Marshall and Swift Cost Service. Final figure is rounded. Land to value is considered to be typical for the area; land value was derived by extraction. Remaining economic life would be 55 years.

Estimated Remaining Economic Life (HUD and VA only)   45 Years

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

**INCOME**

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____ Indicated Value by Income Approach
Summary of Income Approach (including support for market rent and GRM)

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)? [ ] Yes [ ] No  Unit type(s) [ ] Detached [ ] Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal name of project
Total number of phases _____ Total number of units _____ Total number of units sold _____
Total number of units rented _____ Total number of units for sale _____ Data source(s) _____
Was the project created by the conversion of an existing building(s) into a PUD? [ ] Yes [ ] No  If Yes, date of conversion.
Does the project contain any multi-dwelling units? [ ] Yes [ ] No  Data source(s)
Are the units, common elements, and recreation facilities complete? [ ] Yes [ ] No  If No, describe the status of completion.
Are the common elements leased to or by the Homeowners' Association? [ ] Yes [ ] No  If Yes, describe the rental terms and options
Describe common elements and recreational facilities.

**PUD INFORMATION**

Freddie Mac Form 70 March 2005   Page 3 of 6   Fannie Mae Form 1004 March 2005

Summary Appraisal

## Uniform Residential Appraisal Report

File No. YUCP650A4MB9D11

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.    The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.    The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.    The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.    The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.    The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.    The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Summary Appraisal

# Uniform Residential Appraisal Report

File No. YUCP650A4MB9D11

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Summary Appraisal

## Uniform Residential Appraisal Report

File No. YUCP650A4MB9D11

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent.  Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations.  Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature
Name Brian Bonham
Company Name Brian Bonham
Company Address 9510 Byham Lane
Cherry Valley, CA 92223
Telephone Number 909-838-1636
Email Address icecrman@gte.net
Date of Signature and Report 12/30/2009
Effective Date of Appraisal December 29, 2009
State Certification #
or State License # AL038151
or Other (describe)            State #
State CA
Expiration Date of Certification or License 08/25/2011

ADDRESS OF PROPERTY APPRAISED
35233 Velardo Drive
Yucaipa, CA 92399

APPRAISED VALUE OF SUBJECT PROPERTY $ 155,000

LENDER/CLIENT
Name
Company Name Nadeau
Company Address 35233 Velardo Drive
Yucaipa, CA 92399
Email Address

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature
Name
Company Name
Company Address
Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY
[ ] Did not inspect subject property
[ ] Did inspect exterior of subject property from street
    Date of Inspection
[ ] Did inspect interior and exterior of subject property
    Date of Inspection

COMPARABLE SALES
[ ] Did not inspect exterior of comparable sales from street
[ ] Did inspect exterior of comparable sales from street
    Date of Inspection

Freddie Mac Form 70 March 2005          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 1004 March 2005
                                        Page 6 of 6                                          1004_05 062906

Bonham Appraisal Services

APPENDUM

| Borrower: Nadeau | | File No.: YUCP650A4MBSD11 |
| Property Address: 35233 Velardo Drive | | Case No.: |
| City: Yucaipa | State: CA | Zip: 92399 |
| Lender: Nadeau | | |

**Conditions of the Report**
The subject is appraised "AS IS". The GRM is not used since there is insufficient data on SFR resales as income producing
Cost approach lends support. Sales approach to value determines value since it most closely reflects the current market.

Case 6:10-bk-10280-PC    Doc 12    Filed 01/12/10    Entered 01/12/10 16:27:11    Desc
Main Document    Page 28 of 36

SUBJECT PROPERTY PHOTO ADDENDUM

| Borrower: Nadeau | | | |
|---|---|---|---|
| Property Address: 35233 Velardo Drive | | File No.: YUCP650A4MB9D11 | |
| City: Yucaipa | | Case No.: | |
| | State: CA | | Zip: 92399 |
| Lender: Nadeau | | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: December 29, 2009
Appraised Value: $ 155,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

| Borrower: Nadeau | | File No.: YUCP650A4MB9D11 |
| Property Address: 35233 Velardo Drive | | Case No.: |
| City: Yucaipa | State: CA | Zip: 92399 |
| Lender: Nadeau | | |



In ground pool



Detached garage

COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: Nadeau | File No.: YUCP650A4MB9D11 |
| Property Address: 35233 Velardo Drive | Case No.: |
| City: Yucaipa | State: CA    Zip: 92399 |
| Lender: Nadeau | |



**COMPARABLE SALE #1**

34947 Avenue C
Yucaipa
Sale Date: 10-05-09
Sale Price: $ 162,000



**COMPARABLE SALE #2**

13001 Orchid Street
Yucaipa
Sale Date: 09-24-09
Sale Price: $ 141,000



**COMPARABLE SALE #3**

34836 Acacia Avenue
Yucaipa
Sale Date: 12-01-09
Sale Price: $ 155,000

FLOORPLAN

| Borrower: Nadeau | | | |
|---|---|---|---|
| Property Address: 35233 Velardo Drive | | File No.: YUCP650A4MB9D11 | |
| City: Yucaipa | | Case No.: | |
| Lender: Nadeau | State: CA | | Zip: 92399 |



2 Car Garage

20'

22.5'

Pool

Concrete Deck

43.5'

W/H

Bath

Bedroom

Bedroom    Bedroom    20.5'

Bedroom

Bath

49'    18'

Kitchen    Family Room    15'

Dining Area

5.5'

Living Room    13.5'

13.5 X 20 = 270
15 X 25.2 = 383
20.5 X 43.5 = 892
**Total = 1545sf**

20'

PLAT MAP

| Borrower: Nadeau | | | |
|---|---|---|---|
| Property Address: 35233 Velardo Drive | | File No.: YUCP650A4MB9D11 | |
| | | Case No.: | |
| City: Yucaipa | State: CA | | Zip: 92399 |
| Lender: Nadeau | | | |

**LOCATION MAP**

| | |
|---|---|
| Borrower: Nadeau | File No.: YUCP650A4MB9D11 |
| Property Address: 35233 Velardo Drive | Case No.: |
| City: Yucaipa | State: CA    Zip: 92399 |
| Lender: Nadeau | |

# Resume
### Brian Bonham
**Bonham Appraisal Service, 9510 Byham Lane, Cherry Valley, CA 92223**

icecrman@gte.net

**Phone (909) 838-1636  Fax (951) 922-6967**

---

| | |
|---|---|
| Services Offered | Real Estate Appraisals:  residential, single family and multi-family Vacant land, income properties, property valuations |

---

| | |
|---|---|
| Real Estate Appraisal Activities | I have been appraising properties since March 2002. I have been in the Real Estate business for approximately 9 years as an investor and familiar with the trends and values of the housing market. I have lived in the Riverside and San Bernardino county area since 1972. <br><br> I am licensed through the State of California as a Residential Licensed Appraiser,  AL 038151. |

---

| | |
|---|---|
| Significant Assignments | Appraisals throughout Riverside and San Bernardino Counties for approximately 5 years of 1-4 unit, single family, and multi family residences, and vacant land. <br><br> I worked for Appraisal Group Inc. for approximately 3 years. |

---

| | |
|---|---|
| Education: | B. S. degree in Automated Manufacturing, A. S. Electronics Engineering. <br><br> Currently studying Income Property Appraisal for California State Certified Real Estate Appraiser. |

---

| | |
|---|---|
| References: | David Dysart Jr., Appraisal Direct, Banning, CA   (951) 922-8576 <br> Tomas Hunt, CREA, Appraisal Group Inc., Banning, CA  (951) 769-3558 <br> Mark Sternberg, Lender, Provident Bank, Riverside, CA   (951) 781-1033 |

---

| In re: Nadeau, Aaron and Wendy | CHAPTER: 13 |
|---|---|
| Debtor(s). | CASE NUMBER: 6:10-bk-10280-PC |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document described as  Notice of Motion and Motion for a Determination
 o Value of Debtors' Real Property and an Order to Avoid the lien of Citibank, N.A. Declarations _____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On  1/12/10 _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Citibank, N.A., (Billing) P.O. Box 790110 MS 504A, Saint Louis, MO 63179-0110;
Rod (PC) Danielson, 4361 Latham Street, Suite 270, Riverside, CA 92501
United States Trustee, 3685 Main Street, Suite 300, Riverside, CA 92501
Citibank, N.A., (Customer Service) PO Box 769004, San Antonio TX 78245
☑ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 1/12/10 | Mark E. Brenner, Esq. | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                            F 9013-3.1

| In re: Nadeau, Aaron and Wendy | CHAPTER: 13 |
|---|---|
| Debtor(s). | CASE NUMBER: 6:10-bk-10280-PC |

**ADDITIONAL SERVICE INFORMATION (if needed):**

Citibank, N.A.
Bankruptcy Department
PO Box 79022 MS 322
Saint Louis MO 63179-0022

Citibank N.A.
Corporate Headquarters
1000 Technology Dr., MS 322
O'Fallon MO 63368-2240

Hon. Peter Caroll
United States Bankruptcy Judge
3470 12th Street, Courtroom 304
Riverside, CA 92501

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**